UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>VINNIE JOHN UWANAWICH,<br>Defendant. | CASE NO. 2:26-cr-00100-JHC-2<br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Defendant Vinnie John Uwanawich's "Motion for Review and Revocation of Magistrate Judge's Detention Order." Dkt. # 28. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court DENIES the motion.

## II
## BACKGROUND

Defendant is charged with one count of Conspiracy to Commit Wire and Mail Fraud (Count 1), four counts of Wire Fraud (Counts 2-5), and four counts of Mail Fraud (Counts 6-9). *See* Dkt. # 1; *see also* Dkt. # 28 at 3. Such counts arise out of Defendant's alleged participation

in a years' long psychic fraud scheme, together with Co-Defendant Bridgette Doreen Evans, that purportedly stole millions of dollars from victims across the country. *Id.*; *see also* Dkt. # 30 at 2.

Defendant was arrested in Texas on June 10, 2026, based on an Indictment filed with this Court. *See* Dkt. # 28 at 4; *see also* Dkt. ## 1 & 4. Defendant made his initial appearance in the United States District Court for the Eastern District of Texas. *See* Dkt. # 28 at 4. At the appearance, he waived a Rule 5(c)(3) hearing and agreed to temporary detention with the intention of "revisit[ing] the issue of detention" once in the Western District of Washington. *Id.*

On July 9, 2026, Defendant made his initial appearance in the Western District of Washington before the Honorable Michelle L. Peterson. *Id.*; *see also* Dkt. # 16. On that date, he was arraigned and entered a plea of not guilty. *Id.* The Government then moved for pretrial detention. *Id.*; *see also* Dkt. # 19. Over Defendant's objection, Judge Peterson concluded that a detention hearing is warranted because the case involves "(1) a serious risk that the defendant will flee if released; or (2) a serious risk that the defendant will obstruct or attempt to obstruct justice or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate a prospective witness or juror if released." Dkt. # 20 at 2; *see also* Dkt. # 28 at 4. She then granted the Government's motion for detention and ordered detention based on the following reasons: (1) lack of stable residence; (2) lack of stable employment; (3) use of aliases or false documents; and (4) release would pose serious danger to any person or the community. *Id.* at 3–4; *see also* Dkt. # 28 at 5–6. This outcome did not accord with the Pretrial Services Report, which had recommended that the Court release Defendant on his personal recognizance subject to pretrial services supervision and numerous special conditions. Dkt. # 13 at 4–5; *see also* Dkt. # 28 at 4–5.

Defendant now moves for review and revocation of Judge Peterson's July 9, 2026, detention order. *See generally* Dkt. # 28. He requests that the Court revoke said order and

"direct he be released pending trial with the conditions proposed by pretrial services plus the additional conditions to include GPS/EHM monitoring restricting Mr. Uwanawich to reside at the residence of his parents in Ft. Lauderdale, Florida under a curfew, as well as internet and cell phone restrictions." *Id*. at 2.

## III
## Discussion

A person who is ordered detained by a magistrate judge "may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). A district judge reviews de novo a magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990). And while "the district court is not required to start over . . . and proceed as if the magistrate's decision and findings did not exist[,]" it is also required to "make its own independent determination whether the magistrate's findings are correct, with no deference" based on a review of the evidence before it. *Id*. at 1193.

Defendant argues that the Court should revoke Judge Peterson's July 9, 2026 detention order and direct release because: (1) the Government did not meet its burden of establishing that this case is eligible for a detention hearing under 18 U.S.C. § 3142(f); and (2) even if it did, the Government did not meet its burden under the Bail Reform Act of showing that there are no conditions, or combination of conditions, that would reasonably assure Defendant's appearance in court and the safety of others. *See* Dkt. # 28 at 8. For the reasons below, the Court disagrees.

### A. Detention Hearing

The Bail Reform Act provides that a court may detain a defendant awaiting trial only after holding a detention hearing. *See* 18 U.S.C. § 3142(e)(1). Such a hearing may be held "upon motion of the attorney for the Government or upon the judicial officer's own motion in a case, that involves—(A) a serious risk that such person will flee; or (B) a serious risk that such

person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 8 U.S.C. § 3142(f)(2). To trigger such a hearing, the Government must prove by a preponderance of the evidence that the case falls into either category. *See United States v. Subil*, 2023 WL 3866709, at *3 (W.D. Wash. June 7, 2023).

The Government has satisfied this standard. The Government has presented evidence that: (1) Defendant committed the deception-related crimes for which he is charged; (2) if convicted, Defendant will face serious penalties, including jail time, which creates a motivation to flee; (3) Defendant recently acquired a passport; (4) since his arrest, Defendant has provided conflicting information and evolving stories to law enforcement; (5) Defendant has blatantly lied to law enforcement on numerous occasions, including on the subject of his finances and his amount of contact with Evans; (6) Defendant maintained numerous addresses, phone numbers, bank accounts, and other financial services accounts throughout the Government's investigation; (7) on at least one occasion, Defendant has relied on an alias; (8) Defendant helped Evans receive and spend money that was obtained through fraud; (9) Defendant helped Evans contact and continue to defraud victims, including while she was subject to state supervision; (10) Defendant's bank accounts show a steady stream of inflows and outflows, and such movements are not adequately explained by Defendant's purported work buying, fixing, and selling cars; and (11) as recently as June 2026, Defendant was captured on a bank surveillance camera depositing a large sum of cash at a bank branch near his home in Plano, Texas, shortly after his house received a delivery of $105,000 in cash from an alleged victim of Evans' fraud scheme. *See* Dkt. # 30 at 2–12. And while Defendant summarily states that this case is not eligible for a detention hearing, Defendant has provided no evidence or argument to meaningfully rebut the Government's showing under 8 U.S.C. § 3142(f). *See generally* Dkt. ## 28 & 33.

Accordingly, the Court concludes that the Government has met its burden of proving by a preponderance of the evidence that this case involves "(A) a serious risk that such person will flee; or (B) a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The Government has thus met its burden of establishing eligibility for a detention hearing, and so the Court denies Defendant's request to revoke Judge Peterson's detention order and direct release on this basis.

B. Conditions of Release

After a detention hearing is held, the Bail Reform Act permits a court to detain a criminal defendant pending trial only if it determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," courts are instructed to consider the following factors: "(1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 US.C. § 3142(g); *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant." *United States v. Santos–Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015).

The Court concludes that the Government has met its burden under 18 US.C. § 3142(g). As for the nature and circumstances of the offense, Defendant is charged with multiple counts of

wire and mail fraud in connection with his alleged participation in a years' long fraud scheme that stole millions of dollars from victims across the country. Such offenses are highly serious and carry significant criminal penalties. They also reflect a pattern of repeated deception and intentional criminal activity on the part of Defendant that spans many years. And while the charged offenses do not involve violence or weapons, they do involve a significant degree of economic harm to victims across the country. The first factor thus favors pretrial detention.

The second and fourth factors likewise support pretrial detention. While the Court acknowledges that the Government's evidence against Defendant is weaker compared to its evidence against Evans, the Government's evidence against Defendant, particularly as to the conspiracy count, is not weak: the Government has presented phone calls, text messages, financial records, and victim testimony, along with other forms of circumstantial evidence, that all point to Defendant's participation in Evans' fraud scheme. Such evidence, combined with the evidence discussed in part III(A) above, also supports a danger to the community finding, as it reveals that Defendant both has the tools and is likely to continue to engage in deceptive acts, evade law enforcement, and participate in activities that cause significant economic harm to individuals across the country. *See also United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (recognizing that clear and convincing evidence of "economic harm" is enough to justify detention based on "danger to the community"). Such a conclusion is also affirmed by the Pretrial Services Report. *See* Dkt. # 13 at 3–4. The Government has thus succeeded in proving danger to the community by clear and convincing evidence.[1]

[1] The Government "must prove by clear and convincing evidence that the defendant poses a danger to the community[.]" *United States v. Valenzuela*, 2012 WL 1377087, at *1 (W.D. Wash. Apr. 19, 2012) (citing *Gebro*, 948 F.2d at 1121).

In contrast, the third factor does not appear to favor detention. The record shows that Defendant has never been arrested, has never failed to appear in a court proceeding, and has no history of substance abuse, violence, or possession or use of weapons. *See generally* Dkt. It also suggests that Defendant has substantial family and community ties to Florida,[2] and that he would have a place to live in Florida if he were to be released. *Id*. But the Court also does not find that this factor favors release. As noted by the Government, Defendant has given conflicting statements, and at times, blatantly lied to law enforcement, about his family, relationship status, finances, and other topics pertinent to this factor. Defendant's lack of official criminal history is also significantly undermined by the Government's evidence that Defendant likely participated in Evans' past criminal activity and assisted her to violate her previous conditions of state supervision. Accordingly, the Court finds this factor to be neutral.

In sum, three out of the four § 3142(g) factors favor pretrial detention and none favor release. And the Court agrees with the Government that given these circumstances, the conditions of release offered by Defendant would not succeed in ensuring the safety of the community and the appearance of Defendant as required, as the Court has serious concerns regarding Defendant's trustworthiness and the Government's ability to effectively monitor his phone use, internet access, and location if he were to be released to Florida. The Court thus concludes that the Government has met their burden of establishing that pretrial detention is proper under the Bail Reform Act, and so it denies Defendant's request to revoke Judge Peterson's detention order and direct release on this basis.

---

[2] Per the Ninth Circuit, the term "community" in 18 US.C. § 3142(g)(3) "embraces both the community in which the charges are brought and also a community in the United States to which the defendant has ties." *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990).

## IV
## CONCLUSION

For these reasons, the Court concludes that Judge Peterson applied the proper legal standard and reached the appropriate outcome in this case. It thus AFFIRMS Judge Peterson's July 9, 2026 detention order (Dkt. # 20), DENIES Defendant's Motion for Review and Revocation of Magistrate Judge's Detention Order (Dkt. # 28), and ORDERS Defendant to remain in custody.

Dated this 13th day of August, 2026.

John H. Chun
United States District Judge